**Application of AIRPORT COMMUTER SERVICE.**
Docket No. 70460-CCB, Order No. 9520.
Florida Public Service Commission.
June 15, 1971.

John W. Prunty and George Graham, both of Miami, for the applicants.

Phillip Schiff, Miami, for Red Top Sedan Service, Inc. and Greyhound Lines, protestants.

Harvey Ford, Hollywood, for South Broward Transit Authority, protestant.

David J. Reynolds, Miami, testified as a witness for Metropolitan Dade County Transit Authority, protestant.

Chairman JESS YARBOROUGH and Commissioners WILLIAM T. MAYO and WILLIAM H. BEVIS participated in the disposition of this matter.

BY THE COMMISSION.

Pursuant to notice the commission by its duly designated hearing examiner, Leon F. Olmstead, held a public hearing on this matter in Miami on February 2, 1971.

The examiner's report and recommended order were duly served on all of the parties. Exceptions to the recommended order were filed with the commission. Oral argument was heard on the exceptions on May 10, 1971. The entire record herein, including the application, the testimony adduced at the public hearing, the exceptions to the recommended order and oral argument heard thereon, has been examined by the full commission. After due consideration, the commission now enters its order in this cause.

By this application, as amended at the outset of the hearing, Wilbur C. Phillips, Jr. and Charmayne M. Phillips, d/b/a Airport Commuter Service, are seeking a certificate of public convenience and necessity authorizing the transportation of passengers from points in Broward County to the Miami International Airport, restricted against charter.

Applicants propose to pick up passengers in the morning in south Broward County who are employed at the various industries on the Miami International Airport, transport them, closed door, in Dade County to Northwest Thirty-Sixth Street along the airport boundary where they will be unloaded near their various places of employment, with the route terminating at the intersection of Northwest Thirty-Sixth Street and LeJeune Road. Loading for the return trip is to be east along Northwest Thirty-Sixth Street to LeJeune Road, thence retrace the route. Initially it is proposed to start at the northern termini at 7:30 a.m., reaching the southern termini at 8:48 a.m. The return trip is to start at 5:15 p.m. with about the same time in transit.

Mr. Phillips does not propose to be employed full-time in the operations of the proposed bus company but would maintain the equipment. The applicants own a 1958 22-passenger bus and testified that they have made arrangements for rental or purchase of additional or reserve equipment, if needed, from a Mr. Al Leo. Mrs. Phillips is proposed to be the one actually operating the bus if this certificate is granted. She holds a Florida chauffeur's license and has driven the bus on hand since May, 1970, but never hauling passengers for-hire.

The examiner in his findings of fact and conclusions of law stated that the applicants' fitness is not a legal issue and the applicants are qualified to render the proposed service. Although the statute does not specifically require the applicant to present evidence of ability, the commission has always made a finding of ability or inability in motor carrier cases. In docket no. 9184-CCT, order no. 8132, the application was denied on findings that the applicant was not qualified. Likewise, in docket no. 7381-CCT, order no. 6365, the commission denied an application in finding that the applicant was not qualified. In docket no. 8621-CCB, order no. 7627, a portion of the application was denied based on the absence of proof of the applicant's ability. As this commission stated in order no. 8132 in docket no. 9184-CCT —

In addition to the *Florida Motor Lines* case and the *Tropical Coach Lines* case, supra, which indirectly touch on the subject, the Supreme Court in Coast City Coaches, Inc. v. Florida R. R. & P. U. Com'n., 139 So.2d 674, Fla. 1962, stated on page 677 that in circumstances such as these,

"the burden is upon the applicant to establish that there is a need for the service proposed. When this point is reached in the allocation of the burden of proof it becomes the responsibility of a protestant to establish its ability to render the service. This then imposes upon the applicant the burden of going forward with evidentiary demonstration of its superior capacity to meet the transportation needs of the public to be served in the area involved."

More recently the Supreme Court followed this principle in Turf Express, Inc. v. Mason, 204 So.2d 730, Fla. 1967, wherein the court found the applicant "well qualified" vis-a-vis the services of the protestants. Thus, an applicant is required to prove its ability, or superior ability, to provide the service proposed as a condition to the grant of the authority requested; apparently the theory being that it would be a useless gesture for the commission to grant authority to a carrier who was unable to render the service authorized.

The record of the hearing in this application clearly indicates that the applicant is neither financially nor from an experience standpoint able to provide the service proposed. A direct quote from the testimony at the hearing in this matter indicates that the applicant's experience consists of "I am presently employed in the transportation business. I am an elevator man, my father was an elevator man before me, so I am keenly concerned about transportation. I have no previous experience with buses, I have never been licensed before, but I have read books on the subject and I think I am prepared to move into the business." (TR 16, 17) It is doubtful that the commission can consider experience in vertical transportation of elevators to qualify an individual in horizontal transportation of motor buses.

A close scrutiny of the financial statement presented by the applicants indicates cash on hand of $300; cash in the bank of $350; a stock portfolio of $1,312; a residence valued at $22,000; two automobiles valued at $1,500 and a 1958 Setra bus valued at $2,450; personal property valued at $5,000 and cash value life insurance of $500; total of assets is $33,412. On the liability side, the financial statement indicates that a mortgage is payable on the residence of $3,862; a note payable to Otis Elevator Company, $600; and a note payable on the bus of $1,800, giving a total of liabilities of $6,262 — leaving a net worth of $27,150. From this one must deduct residence value, leaving a total net worth of the applicant of $5,150. The residence cannot be considered in the net worth of the individuals because homesteads are not subject to forced sale in the state of Florida and, therefore, would not be accessible to the state or an individual damaged by the applicant's operation. The amount of $5,150 hardly seems to be a sufficient sum to protect the traveling public in such an operation.

The examiner in his findings of fact and conclusions of law found that the protestants, Metropolitan Dade County Transit Authority and South Broward Transit, are government owned bus lines, neither serving the points concerned directly, and that they have no standing to protest the grant of authority sought by the applicant. The commission feels that the examiner was hasty in dismissing any interest that the two transit authorities would have in the proposed service.

Florida Statutes 323.03(3)(a) requires that the commission "take into consideration the effect that the granting of such certificate may have upon transportation facilities within the territory sought to be served by said applicant, and also the effect upon transportation as a whole within said territory." This wording should be given its broadest meaning and not strictly refer to transportation regulated by this commission. Although in every instance a protest or interest of an unregulated carrier may not be germane to the granting or denying of some specific authority, this commission should give some consideration to the total effect granting of this authority would have on *all* transportation in the territory sought to be served. It is obvious that the transportation authorities are public subsidized bodies attempting to provide transportation in a logical and systematic endeavor. If the commission were to disregard their efforts totally, taking a hypothetical to its extreme, i.e., to allow a particular regulated motor carrier to run ten minutes ahead of a transit authority bus, would soon produce chaotic conditions in the state. This commission must take an omnipotent view of the transportation in the state, as required by §323.03(3)(a), quoted above.

202

The transcript of record in the hearing in this matter contained evidence that a plan of inter-county transportation was imminent upon the completion of an entranceway into a building called "The Treasury" and that the transit time of this operation would be 45 minutes. At the oral argument, the representatives of the transit authorities indicated that this service was now in operation and that transit time was in fact 45 minutes. The commission finds from the above discussion that the granting of this application would have an adverse effect on the transportation facilities in the area sought to be served.

In regards to the applicants providing substantial competent evidence to prove public convenience and necessity, the record indicates that two public witnesses appeared on behalf of the applicant to testify to the need of the proposed transportation. It is incredulous that the testimony of two public witnesses is sufficient to grant this certificate. The record indicates that in the area involved, 2,000 families commute between south Broward County and the Miami International Airport, and such a scant showing of interest can hardly require this commission to grant such a certificate. The commission finds that the applicant did not prove by substantial competent evidence that public convenience and necessity require the granting of this application. Coupled with the showing of the adverse effect upon the transportation facilities in the area, the inability both financially and from an expertise standpoint, the commission finds that the application for a certificate of public convenience and necessity to provide the transportation described in the first paragraph of this order should be denied.

It is therefore ordered that the application of Wilbur C. Phillips, Jr. and Charmayne M. Phillips, d/b/a Airport Commuter Service, 240 N. W. 145th Street, Miami, for a certificate of public convenience and necessity to transport passengers from points in Broward County to Miami International Airport, restricted against charter, be and the same is denied.